UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BRUCE WASHINGTON                          CIVIL ACTION

VERSUS                                    NO. 24-145

RANDY SMITH, ET AL.                       SECTION "O" (5)

ORDER AND REASONS

Before the Court in this civil-rights case is Defendants' motion[1] to strike Plaintiff Bruce Washington's second amended complaint (the "complaint"), in its entirety or in part, or in the alternative to provide a more definite statement. Defendants Randy Smith, Jeffrey Boehm, Michael Ripoll Jr., George Cox, Dale Galloway, Frank Francois Jr., Chance Cloud, Taylor Lewis, Curtis Finn, Douglas Searle, Justin Parker, Denise Mancuso, Jeanine Buckner, Michael Sevante, and Jeremy Church are all employed by the St. Tammany Parish Office (STPSO).[2] Plaintiff opposes the motion.[3] For the following reasons, Defendants' motion is **DENIED IN PART** and **GRANTED IN PART**.

I.    BACKGROUND

This civil-rights case arises out of two traffic stops and the events that followed. Plaintiff Bruce Washington alleges that he was pulled over by police for racially motivated reasons twice in 2023: first on January 13 and again on October 8.[4]

---

[1] ECF No. 100.
[2] ECF No. 96 ¶ 9.
[3] ECF No. 111.
[4] ECF No. 96.

Washington's complaint provides substantial factual allegations.  What follows is a brief overview of the main events, as alleged by Washington.

During the first traffic stop, Washington alleges that he was subjected to unconstitutional searches and seizures, and that the officers involved—Officers Chance Cloud, Taylor Lewis, and Curtis Finn—unconstitutionally extended the stop.[5] Specifically, he alleges that the officers extended the traffic stop past the time necessary to fulfill its purpose, which was to provide a warning to Washington for Washington's un-signaled lane change.[6]  Washington alleges that the officers did so without reasonable suspicion.[7]  He additionally alleges that the officers, specifically Officer Cloud, unconstitutionally frisked him and searched his pockets, wallet, and vehicle.[8]

Washington alleges that the second stop was made by Officer Searle without reasonable suspicion and for racially motivated reasons.[9]  He specifically alleges that Officer Searle told Washington that the stop was initiated because Washington did not have insurance and that this was untrue as Washington did have insurance.[10] Washington alleges that Officer Searle did not activate his body-worn camera until he had returned to his vehicle with Washington's identification.[11]  Washington further alleges that Officer Searle took photographs of Washington's identification on

---

[5] *Id.* ¶¶ 54-216, 305-430.
[6] *Id.* ¶¶ 305-333.
[7] *Id.* ¶ 317.
[8] *Id.* ¶¶ 72-216, 334-430.
[9] *Id.* ¶¶ 245-255, 431-35.
[10] *Id.* ¶¶ 247-48.
[11] *Id.* ¶¶ 250.

a device that Washington believes to be Searle's personal cellphone—a violation of STPSO policy—and that this cellphone had photographs of other individuals' identifications.[12]

Washington further alleges that following both stops he contacted the STPSO to report the actions of Officers Cloud, Lewis, Finn, and Searle.[13]  He alleges that Captain Dale Galloway and Sergeant Frank Francois of the STPSO Internal Affairs spoke to him following the January traffic stop as part of their internal investigation, and that two days after Washington's interview the STPSO Public Integrity Bureau found that the actions of Officers Cloud, Lewis, and Finn were within the parameters of the STPSO's policies and regulations.[14]  Washington alleges that Francois and Galloway were more difficult to meet with following the October traffic stop, and that he was ultimately unable to sit for an interview with them because of their insistence that Washington's lawyer not be able to accompany Washington.[15]  He alleges that the only violation of STPSO policy that Francois and Galloway's investigation found was Searle's failure to turn on the body-worn camera after initiating the stop.[16]

Washington further alleges that he sought record information from the STPSO in late 2023 and that the Custodian Defendants (Denise Mancuso, Jeanine Bucker,

---

[12] *Id.* ¶¶ 251-52.
[13] *Id.* ¶¶ 217-226, 256-277.
[14] *Id.* ¶¶ 217-226.
[15] *Id.* ¶¶ 256-267.
[16] *Id.* ¶ 273.

Michael Sevante, and STPSO Records Custodian John Doe(s))[17] provided untimely and unsatisfactory responses.[18]

Washington's complaint additionally includes allegations of racist policies on behalf of the STPSO, including past statements made under previous Sheriff administrations and statistics underlying Washington's assertion that Black and other people of color are subjected to more traffic stops than White people.[19] Washington additionally mentions the death of Tyre Nichols, a Black man whose death following a traffic stop in Memphis in January 2023 was widely reported on.[20] The allegations described within this paragraph are largely the specific paragraphs that Defendants seek to be stricken if the Court does not strike the complaint in its entirety.

Defendants argue that Plaintiff's complaint should be stricken in its entirety as an impermissible "shotgun" pleading.[21]  Alternatively, they argue that certain paragraphs in the complaint should be stricken as immaterial, impertinent, scandalous, and prejudicial.[22]  As an additional alternative, Defendants argue that Plaintiff should be ordered to provide a more definitive statement.[23]  Plaintiff opposes Defendants' motion, arguing that the complaint satisfies Federal Rules of Civil Procedure 8(a)(2) and 10(b); the specific statements challenged are not impertinent,

---

[17] *Id.* ¶¶ 48-51.
[18] *Id.* ¶¶ 280-304.
[19] *Id.* ¶¶ 10-16, 227-233.
[20] *Id.* ¶¶ 3, 118, 547.
[21] ECF No. 100.
[22] *Id.*
[23] *Id.*

irrelevant, and scandalous, and moreover Defendants have not shown that those statements will be prejudicial; and that Plaintiff's pleading is not so vague that Defendants cannot reasonably respond.[24]

## II.    ANALYSIS

### A. Motion to Strike the Complaint as a Whole

Although captioned as a motion to strike, Defendants first request is more accurately described as a motion to dismiss for failure to state a claim. "[A]lthough there are instances in which Rule 12(f) has been used to strike a pleading in its entirety," motions to strike are typically inappropriate vehicles for requesting the dismissal of a whole complaint. 5 WRIGHT & MILLER'S FEDERAL PRACTICE AND PROCEDURE § 1380 (3d ed. Nov. 2025 Update). Indeed, dismissal under Rule 12(f) "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

Here, Defendants argue that Plaintiff's complaint is a "shotgun" pleading inconsistent with the requirements of Federal Rule of Civil Procedure 8.[25] Defendants argument rests upon Plaintiff's use of group allegations and defendant categories, and Plaintiff's incorporation of preceding paragraphs into subsequent claims.[26]    Defendants additionally argue that Washington's complaint is impermissibly long and should therefore be dismissed in its entirety.[27]

---

[24] ECF No. 111.
[25] ECF No. 100-1 at 3-5.
[26] *Id.*
[27] *Id.* at 5-7.

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint that does not meet Rule 8(a)(2)'s pleading standard should be dismissed for failing to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). A complaint is not a "shotgun" pleading simply because it categorizes defendants, see *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 2016 WL 4479507, at \*3 (E.D. La. Aug. 25, 2016) (Morgan, J.)*, aff'd in part, re'vd in part and remanded on other grounds,* 869 F.3d 381 (5th Cir. 2017) ("A complaint that contains 'group allegations' and 'lumps together' defendants is not *ipso facto* in violation of Rule 8."), or "incorporates by reference previous allegations." *Lee v. Lawrence*, 2024 WL 1890298, at \*1 (M.D. La. Apr. 29, 2024) (Johnson, J.) (cleaned up). What matters is whether the complaint lays out the conduct underlying each allegation and gives each defendant adequate notice of the plaintiff's claims and the grounds upon which they rest. *See Body by Cook, Inc.*, 2016 WL 4479507, at \*3; *Lee*, 2024 WL 1890298, at \*1.

Plaintiff's complaint lays out the conduct underlying each claim. And Plaintiff's grouping of the defendants does not amount to impermissible group or shotgun pleading. The allegations in Plaintiff's second amended complaint are sufficient to give Defendants adequate notice of his claims. Neither Washington's use of groups nor his incorporation of preceding paragraphs by reference cause confusion. His factual allegations are not "buried beneath innumerable pages of rambling irrelevancies." *Martin v. Tesoro Corp.*, 2012 WL 1866841 (W.D. La. May 21, 2012) (internal quotation omitted). This is not such a case where the complaint is

incomprehensible such that dismissal is warranted based on either Rule 12(f) or Rule 12(b)(6).

Further, Defendants cite to no authority that establishes that complaints must be of a certain length. Defendants instead look to inapt cases wherein the Courts found complaints to be confused, rambling, and incomprehensible. *See McZeal v. J.P. Morgan Chase Bank, NA*, 2014 WL 3166715, at *6 (E.D. La. Jul. 7, 2014) (describing the complaint as "impenetrably dense, jargon-laden, and largely incomprehensible"); *Muniz v. Medtronic, Inc.*, 2014 WL 1236314 (W.D. Tex. Mar. 20, 2014) (dismissing a complaint wherein the plaintiff did not describe the factual allegations specifically related to the case until page fifty-nine of seventy-seven). As stated above, Defendants here have been adequately notified of Washington's claims and the factual allegations underlying them. While long, his complaint is not confused or rambling, it does not waste the majority of pages on allegations unrelated to Washington and the present matter, and it is not difficult to parse.

Accordingly, the Court denies Defendants' motion to dismiss the complaint in its entirety.

### B. Motion to Strike "Immaterial, Impertinent, or Scandalous" Material

Rule 12(f) governs motions to strike; it permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). A Rule 12(f) motion to strike is a "drastic remedy to be resorted to only when required for the purposes of justice." *Augustus v. Bd. of Pub. Instruction of Escambia Cty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962); *see*

*also Synergy Mgmt., LLC v. Lego Juris A/S*, 2008 WL 4758634, at \*1 (E.D. La. Oct. 24, 2008) ("Motions to strike made under Rule 12(f) are viewed with disfavor by the federal courts, and are infrequently granted."). A motion to strike should be granted only when "the allegations are prejudicial to the defendant or immaterial to the lawsuit." *Johnson v. Harvey*, 1998 WL 596745, at \*7 (E.D. La. Sept. 8, 1998) (internal quotation omitted). Immateriality is established by showing that the challenged allegations "can have no possible bearing upon the subject matter of the litigation." *Bayou Fleet P'ship v. St. Charles Parish*, 2011 WL 2680686, at \*5 (E.D. La. July 8, 2011) (internal quotation omitted). The decision to grant or deny a motion to strike is reserved to the Court's discretion. FED. R. CIV. P. 12(f) (utilizing the permissive "may").

With one exception, Defendants have not carried their burden. The specific paragraphs Defendants challenge in the complaint discuss *inter alia* interactions with the police as a person of color; statistics related to Washington's claims that Black people are more frequently stopped by the police; and the history of alleged abuses perpetrated by the STPSO. It is hard to see how such paragraphs "can have no possible bearing upon" Washington's case. *Bayou Fleet P'ship*, 2011 WL 2680686, at \*5. Indeed, it would be difficult for Washington to bring claims for racially motivated policing without the mention of race or alleging that the police treat individuals differently based on their race. Moreover, with respect to all but one subset of the challenged allegations, Defendants do not carry their burden of showing prejudice. *Cf. Sadler v. Benson Motors Corp.*, 1997 WL 266735, at \*1-2 (E.D. La. May

15, 1997) (striking "Ku Klux Klan" as immaterial and highly prejudicial when the reference "add[ed] nothing to the material allegations of the complaint" and plaintiff could "show that defendant's alleged actions were racially discriminatory without" using the term but denying the request to strike "lynch noose" because it was "factually descriptive of the rope that was allegedly placed at plaintiff's workstation and of the perceived racial animus behind such an action"). That Defendants are cast in a negative light is insufficient. *See id.* at *2 ("Although defendants are understandably concerned by plaintiff's accusations of grave misconduct, they may not rely upon Rule 12(f) to dismiss those accusations.") (quoting *Succession of Wardlaw*, 1994 WL 479183, at *1 (E.D. La. Aug. 30, 1994)).

The one exception is Plaintiff's reference to Tyre Nichols in paragraphs 3, 118, and 547, and associated footnotes. The Court finds that the complaint alleges no plausible connection between the death of Tyre Nichols in Memphis and Plaintiff's allegations against STPSO. Plaintiff has not alleged that he was aware of Tyre Nichols's death at the time of his traffic stops, or that he was moved to take or not take some action during the traffic stops because of fear related to Tyre Nichols's death. References to Tyre Nichols have no possible bearing upon the subject matter of the litigation and only serve to prejudice Defendants by stoking passions about an unrelated event.

The Court therefore exercises its ample discretion to deny Defendants' motion to strike the contested paragraphs in the complaint, except the Court grants Defendants' motion under Rule 12(f) as to any mention of Tyre Nichols. Such

references in paragraphs 3, 18, and 547, and related footnotes, will be stricken from the complaint.

### C. Rule 12(e) Motion for a More Definite Statement

A party unable to frame a response to an opponent's pleading may seek an order requiring his opponent who filed the indefinite pleading to lodge a more definite statement. That is, "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that a party cannot reasonably prepare a response." FED. R. CIV. P. 12(e). "Given the liberal pleading standard set forth in Rule 8(a), Rule 12(e) motions are disfavored." *Murugi v. Tex. Guaranteed*, 646 F. Supp. 2d 804, 811 (E.D. La. 2009) (citing *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959)). "A court should only grant a more definite statement when the complaint is 'so excessively vague and ambiguous to be unintelligible and as to prejudice the defendant seriously in attempting to answer it.'" *Engles v. Great Lakes Ins. SE*, 675 F. Supp. 3d 702, 705 (E.D La. 2023) (quoting *Phillips v. ABB Combustion Eng'g*, 2013 WL 3155224, at *2 (E.D. La. June 19, 2013)).

Defendants argue that the complaint contains "numerous allegations" without factual support.[28]  Defendants' sparse argument fails to show that Plaintiff's complaint is "so vague or ambiguous" that they cannot reasonably respond.  Fed. R. Civ. P. 12(e).  The Court accordingly denies Defendants' disfavored motion.

---

[28] ECF No. 100-1 at 15-16.

## III.    CONCLUSION

**IT IS ORDERED** that Defendants' motion[29] is **DENIED IN PART** as to Defendants' request that the complaint be stricken in its entirety; that Plaintiff be ordered to provide a more definitive statement; and that certain paragraphs in the complaint be stricken as immaterial, impertinent, scandalous, and prejudicial, with one exception.

**IT IS FURTHER ORDERED** that Defendants' motion is **GRANTED IN PART** as to the references to Tyre Nichols in paragraphs 3, 118, and 547, and related footnotes, which shall be stricken from the complaint.

New Orleans, Louisiana, this 25th day of March, 2026.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[29] ECF No. 100.

11